IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| WILLIAM R. HAAS, )<br>Plaintiff, )<br>)<br>v. )<br>)<br>FALMOUTH FINANCIAL, LLC, )<br>Defendants. )<br>) | Case No. 1:10cv565 |

ORDER

At issue in this Truth in Lending Act ("TILA")[1] matter are defendants' motions for summary judgment on (i) plaintiff's TILA claims for rescission and damages, and (ii) defendants' counterclaims alleging breach of the deed of trust. In essence, plaintiff obtained a home loan from defendants and subsequently sought rescission of that loan based on alleged TILA violations. When defendants refused to honor plaintiff's rescission demand, plaintiff ceased making loan payments and brought the instant suit. Defendants contend that plaintiff's rescission claim fails because plaintiff has not demonstrated his ability to meet his tender obligation, which is a prerequisite for rescission. Accordingly, defendants argue that because plaintiff is not entitled to rescission, the home loan should be declared in default.

For the reasons that follow, defendants' motions for summary judgment must be granted in part.

I.[2]

Plaintiff William R. Haas, a Virginia resident, originally brought this action against a single defendant, Falmouth Financial, LLC ("Falmouth"), a Virginia limited liability company

---

[1] See 15 U.S.C. § 1601, et seq.

[2] The facts recited here are not materially disputed.

engaged in the business of providing home mortgage loans. This action arises out of a home loan issued by Falmouth to William Haas and his wife, Linda Sue Haas, also a Virginia resident. Falmouth answered the complaint and filed counterclaims. Subsequently, HSC Real Estate Holdings, LLC ("HSC"), a Virginia limited liability company that funded the loan to the Haases, moved (i) to intervene in the case as a defendant/counterclaim-plaintiff, and (ii) to join plaintiff's wife as a counterclaim-defendant. HSC's motion was granted, and the parties were aligned accordingly. *See Haas v. Falmouth Financial*, No. 1:10cv565 (E.D. Va. Oct. 1, 2010). Thus, William Haas remains the sole plaintiff,[3] Falmouth and HSC are defendants/counterclaim-plaintiffs, and William and Linda Haas are counterclaim-defendants. Falmouth and HSC (collectively "defendants") now seek summary judgment both on plaintiff's claims and on the counterclaims.

On May 28, 2008, the Haases obtained a home loan from Falmouth in the amount of $650,000 to refinance their residential home located at 28045 Ticonderoga Road in Chantilly, Virginia (the "Chantilly property"). According to a January 2007 appraisal provided by plaintiff to Falmouth while the loan was negotiated, the value of the home was estimated at that time to be $3,865,000. The loan was evidenced by a note ("Haas Note") and secured by a deed of trust ("Deed of Trust") as a lien on the home.

HSC's interest in this matter arose shortly after the loan closing. On March 23, 2009, Falmouth executed a non-recourse note obliging it to pay HSC $375,000 on May 29, 2009, the same maturity date as the Haas Note. The Falmouth Note was secured by the Haas Note and the

---

[3] It is unclear how William Haas may obtain rescission if his wife, who is also a party to the loan, is not joined as a plaintiff. In any event, the parties do not address this issue, and in light of the decision reached here, the issue it not material.

Deed of Trust. On August 31, 2010, Falmouth assigned its right, title, and interest in the Haas Note to HSC.

Plaintiff asserts that various TILA violations occurred at or near the time of the loan closing with Falmouth. In particular, plaintiff alleges that Falmouth did not provide certain TILA disclosures and that plaintiff's name was forged on certain documents that he never saw nor signed.[4] Nevertheless, plaintiff made eleven payments on their home loan before falling into arrears. Then, on July 20, 2009, William Haas sent a written notice of rescission to Falmouth indicating that he was rescinding his home loan pursuant to his rights under TILA. Falmouth refused to honor plaintiff's rescission demand, contending that no TILA violations occurred, and that plaintiff's rescission right expired three days after closing. Plaintiff contends that Falmouth's failure to provide the required TILA disclosures at closing extended his rescission period from three days to three years.

Plaintiff made no further payments on the loan after demanding rescission, and foreclosure proceedings commenced. Foreclosure on the home was scheduled for June 4, 2010, but plaintiff filed the instant action on May 28, 2010. Foreclosure proceedings were immediately suspended and have not resumed.

Plaintiff seeks rescission of the home loan transaction, a declaratory judgment as to his TILA tender obligation, statutory damages for failure to recognize rescission, and attorney's fees. Defendants' counterclaims seek (i) a declaratory judgment that the loan was never properly

---

[4] Defendants apparently concede that a genuine issue of material fact exists as to whether these TILA violations took place, and thus it is assumed for the purposes of this summary judgment analysis that the violations occurred. Thus, the only issue raised here is whether plaintiff has adduced sufficient evidence to meet his tender obligation. *See Sapphire Dev., LLC v. Span USA, Inc.*, 120 Fed. Appx. 466, 470 (4th Cir. 2005) (summary judgment analysis proceeds by assuming the version of any material factual dispute most favorable to the nonmovant).

rescinded; (ii) damages, including the note principal, interest, and late fees; and (iii) attorney's fees.

On December 9, 2010, defendants moved for summary judgment, contending that plaintiff's rescission claim fails because plaintiff has not adduced sufficient evidence to show he can meet his TILA tender obligation—that is, his obligation to return the borrowed funds to Falmouth—if rescission were ordered. Because the record at that time was devoid of facts concerning plaintiff's ability to meet his tender obligation, plaintiff sought to reopen discovery on that issue so that he might obtain an independent appraisal of his home's value. This request was denied, given that naming a new expert after the close of discovery would sharply prejudice defendants. *Haas v. Falmouth Financial, LLC*, No. 1:10cv565 (E.D. Va. Jan 14, 2011) (Order). Yet, as a matter of grace, plaintiff was granted sixty days

> (i) [to] obtain a loan on the remaining equity in his home, (ii) [to] sell his home, or (iii) [to] take some other action the result of which would demonstrate to defendants and the Court that he has the ability to meet his tender obligation under TILA.

*Id.* At the close of this sixty day period, the parties were directed to submit supplemental summary judgment memoranda on the issue of plaintiff's tender obligation. *Id.*

In the time since the January 14, 2011 Order, plaintiff still has not sold his home or obtaining other financing to meet his tender obligation. Nevertheless, plaintiff contends that if rescission were ordered, he could easily sell the home and pay the tender obligation from the sale proceeds. Although there was initially some dispute over the amount of plaintiff's tender obligation, the parties agree that if rescission were ordered, plaintiff would need to tender $487,159.14 to Falmouth.[5] After taking into account all taxes and fees that would have to be

---

[5] This figure is calculated by subtracting loan payments and settlement fees from the loan principal. *See* 15 U.S.C. § 1635(b); 15 C.F.R. §§ 226.15(d)(1), 226.23(d)(1). Although a portion of every loan payment typically goes to interest, the tender obligation under TILA is calculated

paid if plaintiff sold the Chantilly property, the parties agree that the property would have to be sold for at least $528,124.02 in order for plaintiff to meet his tender obligation.

Thus far, the highest offer plaintiff has received for his home was an offer to purchase the property for $500,000 with a buy-back option for $750,000. Plaintiff rejected this offer because, in his view, the deal presented the unsatisfactory risk that he and his wife might not be unable to obtain the funds necessary to exercise the buy-back option. In any event, this offer has since been withdrawn. Given that there are no qualified offers to buy the home (*i.e.*, offers for at least $528,124.02), and no qualified offers are currently outstanding, plaintiff concede that they "are not in a position to submit to the Court a contract for sale of the home (even with a buy-back option) to demonstrate without question that they have the funds to tender." Pls. 2d Supp. Mem. at 2.[6] Nevertheless, they contend that defendants should be denied summary judgment because the record creates at least a dispute of fact as to whether plaintiff could meet their tender obligation.

## II.

The summary judgment standard is too well-settled to require elaboration here. In essence, summary judgment is appropriate under Rule 56, Fed. R. Civ. P., only where, on the basis of undisputed material facts, the moving party is entitled to judgment as a matter of law.

---

as though every cent of each loan payment went entirely to paying down the loan principal—significant benefit to the debtor.

[6] Plaintiff has also adduced evidence of a "put option" on his home, which he contends provides them the right to sell the property to an unnamed party for $600,000. As an initial matter, this contract, attached as an exhibit to plaintiff's Second Supplemental Summary Judgment Memorandum, contains several blanks, including a blank for a party's name, that have been filled in illegibly or not at all. In any event, plaintiff apparently concedes that despite calling it a "put option," the contract does not actually obligate any party to pay plaintiff $600,000 for the property. As such, the contract is not probative of whether plaintiff would be able to meet the tender obligation if rescission were ordered.

5

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Importantly, to defeat summary judgment the non-moving party may not rest upon a "mere scintilla" of evidence, but must set forth specific facts showing a genuine issue for trial. *Id.* at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Thus, the party with the burden of proof on an issue cannot prevail at summary judgment on that issue unless that party adduces evidence that would be sufficient, if believed, to carry the burden of proof on that issue at trial. *See Celotex*, 477 U.S. at 322.

### III.

The central issue on summary judgment is whether the summary judgment record creates a dispute of fact as to whether plaintiff could meet his tender obligation if he were successful on the rescission claim. The Truth in Lending Act provides that "the obligor shall have the right to rescind [a home loan] transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms . . . together with a statement containing the material disclosures." 15 U.S.C. § 1635(a). Although the right of rescission generally expires after three days, if certain TILA violations occur—such as the failure to provide the requisite material disclosures—the deadline for exercising rescission extends to three years. 15 U.S.C. § 1635(f); 12 C.F.R. § 226(a)(3). Defendants do not address, and therefore concede solely for the purposes of summary judgment, that plaintiff would be able to meet his burden to show (i) that TILA violations occurred at closing, extending the rescission deadline to three years; and (ii) that plaintiff timely exercised this rescission right.

Yet, the purported exercise of the TILA rescission right does not automatically cause rescission to occur. *Id.* at 821. As the Fourth Circuit noted in *American Mortgage Network, Inc. v. Shelton*, 486 F.3d 815 (4th Cir. 2007), because "[t]he equitable goal of rescission under TILA is to restore the parties to the 'status quo ante,'" the borrower seeking rescission must be able to tender the borrowed funds back to the lender to obtain rescission. *Id.* (citing *Yamamoto v. Bank*

6

*of New York*, 329 F.3d 1167, 1172 (9th Cir. 2003)). Of course, to meet this obligation, plaintiffs seeking rescission frequently allege that they would be able to meet their tender obligation if they are allowed to sell the property after rescission is ordered and tender the proceeds. *See, e.g., Taylor v. Deutsche Bank Nat'l Trust Co.*, 2010 U.S. Dist. LEXIS 110499, at *13-14 (E.D. Va. Oct. 18, 2010); *Hudson v. Bank of Am., N.A.*, 2010 U.S. Dist. LEXIS 57909, at *5 (E.D. Va. June 11, 2010). While courts are entitled to alter the timing of tender to provide some flexibility to the parties,[7] it is critical that a court, in adjudicating a rescission claim, not order the lender to release its security interest in the debtor's property—thereby converting the lender into an unsecured creditor—without being "assured" that the debtor will be able to repay the borrowed funds. *Id.* at 820. Proceeding otherwise would "offend[] traditional notions of equity." *Id.* at 821. And if a plaintiff is unable to demonstrate an ability to meet the tender obligation, a court has the discretion to dismiss the rescission claim without reaching the merits of the underlying TILA violations. *Id.*; *accord Yamamoto*, 329 F.3d at 1173.

District courts in the Fourth Circuit following *Shelton* have routinely dismissed plaintiffs' rescission claims, both at the Rule 12(b)(6) stage and at summary judgment, where plaintiffs fail to allege or demonstrate they would be able to meet their tender obligation if rescission were ordered. For example, in *Hudson*, the district court granted a motion to dismiss where the plaintiff alleged that although he did not know the exact amount of his tender obligation, he could meet his obligation (i) if he were given more time to seek refinancing or a buyer, and (ii) if he won the damages sought in his TILA suit, which he could then put toward the tender. 2010 U.S. Dist. LEXIS 57909, at *15. On these facts, the court sensibly held that "given the context of the case and the Court's judicial experience," it could not "reasonably conclude that the

---

[7] *See Shelton*, 486 F.3d at 819 (noting that the rescission remedy is "an equitable doctrine subject to equitable considerations").

plaintiff would "be able to pay the as yet unknown amount due on the loan within a reasonable period of time following" resolution of his claims. *Id.*

In *Taylor*, the plaintiff knew the amount of his tender obligation, but his rescission claim still failed—this time on summary judgment—because plaintiff failed to adduce evidence that he would be able to satisfy his tender obligation. 2010 U.S. Dist. LEXIS 110499, at *14. In that case, the plaintiff simply asked for more time and "indicat[ed] that he would be willing to sell the house 'as a last resort.'" *Id.* The court appropriately found that because plaintiff failed to show his ability to tender, his rescission claim failed on summary judgment.

Finally, in *Larrabee v. Bank of Am., N.A.*, 2010 U.S. Dist. LEXIS 122884, at *14-15 (E.D. Va. Nov. 19, 2010), the plaintiff "offered only caveat-laden speculations regarding her ability to tender" and rested on the "unsubstantiated, unqualified assertion that she 'estimate[s] the value of [her] home to be $165,000.'" *Id.* at *15 (alterations in original). Unsupported assertions, of course, are not sufficient to defeat summary judgment, and accordingly, the defendants in *Larrabee* were granted summary judgment on that claim. *Id.*; *see also Celotex*, 477 U.S. at 322 (nonmovant at summary judgment must adduce evidence that would be sufficient, if believed, to carry the burden of proof on that issue at trial); *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) ("[u]nsupported speculation is not sufficient to defeat a summary judgment motion")).

Here, the evidence provided by plaintiff concerning his ability falls well short of what is required under *Shelton*. Plaintiff asserts that his home is worth far more than the $528,124.02 that he would have to obtain at sale to satisfy the tender obligation, but this bald assertion, like the similar assertion in *Larrabee*, cannot create an issue of fact for summary judgment purposes. *See id.* Plaintiff could have obtained an independent appraisal of their home during discovery,

which might have provided critical evidence of the home's value, but he failed to do so. Instead, plaintiff relies chiefly on the fact that they were offered $500,000 for the property, an offer that has since been withdrawn. As plaintiff concedes, even if the offer were reinstated and accepted, the amount of the sale would still be insufficient to satisfy his tender obligation. Plaintiff apparently believes that the $500,000 offer is "some evidence" of the home's value that should at least create a dispute of fact as to whether plaintiff could sell the home for the requisite $528,124.02. While an offer on a property might under certain circumstances be probative of the property's fair market value, an offer at a price *below* the price needed for tender does not create a dispute of fact as to whether a property can be sold for the price required for tender. Such an inference is entirely speculative and is thus inappropriate for summary judgment. *See Felty*, 818 F.2d at 1130. At best, therefore, plaintiff has created a dispute of fact as to whether he might sell his home for $500,000, which would still leave him $28,124.02 short of his obligation to make a qualified tender of the outstanding loan amount.

Plaintiff also asserts that the 2007 appraisal, which valued the property at more than $3.8 million, should satisfy any doubts as to his satisfy his tender obligation. Of course, it is well known that housing prices have fallen dramatically since 2007, and it would be entirely inappropriate to draw any conclusions whatsoever about the value of plaintiff's property from an appraisal done more than four years ago. In any event, if the property were currently worth anywhere near this amount, plaintiff would not be in the position he is now, namely unable to produce a single offer to purchase the home for more than $500,000.[8] Indeed, it is telling that despite having several months to sell his home for the requisite price, knowing full well that the failure to do so might lead to dismissal of his rescission claim, plaintiff has not made a sale.

---

[8] As noted previously, the "put option" cited by plaintiff does not provide probative evidence of the property's value. *See* note 6, *supra*.

Although rescission is a statutory remedy under TILA, "it remains an equitable doctrine subject to equitable considerations." *Shelton*, 486 F.3d at 819. Because recession entails restoring the parties to the status quo ante, rescission cannot be granted where, as here, the borrower fails to demonstrate that he has the ability to meet his tender obligation. If plaintiff were allowed to achieve rescission without meeting his tender obligation, the lender would be reduced to an unsecured creditor. Such a result is not only inequitable, but it is inconsistent with the intent of Congress in drafting TILA. *Id.* at 820-21 ("Clearly it was not the intent of Congress to reduce the mortgage company to an unsecured creditor or to simply permit the debtor to indefinitely extend the loan without interest."). In sum, because plaintiff has failed to meet his burden on summary judgment to demonstrate at least a dispute of fact as to his ability to meet his tender obligation, defendants are entitled to summary judgment on plaintiff's TILA claims.

Furthermore, because plaintiff's rescission claim fails, it is appropriate to grant partial summary judgment to defendants with respect to defendants' counterclaims. Specifically, defendants are entitled to a declaration that the Haases are in default on their note and owe defendants the note's balance. As to the amount of interest, penalties, and attorney's fees sought by defendants, it is appropriate to grant the parties leave to file supplemental memoranda concerning these remaining matters.

Accordingly, and for good cause,

It is hereby **ORDERED** that the motions for summary judgment brought by defendants/counterclaim-plaintiffs (Doc. Nos. 54, 57) are **GRANTED** as follows:

> (i) Judgment is entered in favor of defendants and against plaintiff on plaintiff's claim for rescission and the remaining claims dependent on rescission.

(ii) Judgment is entered in favor of defendants (as counterclaim-plaintiffs) and against William Haas and Linda Haas (as counterclaim-defendants) on defendants' counterclaims, inasmuch as the Court **FINDS** William Haas and Linda Haas in default of the Note with the balance owed to defendants in the amount of $650,000. Defendants' counterclaims also seek interest, late fees, and attorney's fees, and these matters will be separately addressed after supplemental submissions from the parties.

It is further **ORDERED** that the parties are **GRANTED LEAVE** to file legal memoranda concerning the appropriate amount interest, late fees, and attorney's fees as follows:

(i) Counterclaim-plaintiffs shall file legal memoranda concerning these matters no later than 5:00 p.m., Monday, May 16, 2011.

(ii) Counterclaim-defendants shall file responsive legal memoranda no later than 5:00 p.m., Monday, May 23, 2011.

(iii) Counterclaim-plaintiffs shall file any legal memoranda in reply to counterclaim-defendants' response no later than 5:00 p.m., Thursday, May 26, 2011.

(iv) A hearing on this matter, if necessary, is **SCHEDULED** for Friday, May 27, 2011.

The Clerk is directed to send a copy of this Order to all counsel of record.

Alexandria, Virginia
May 4, 2011

/s/
T. S. Ellis, III
United States District Judge